UNITED STATES of America

v.

Ronell WILSON, Defendant.

No. 04–CR–1016 NGG.

United States District Court,
E.D. New York.

Feb. 15, 2013.

See also 610 F.3d 168.

Colleen Quinn Brady, The Law Office of Colleen Quinn Brady, David Stern, Rothman, Schneider, Soloway & Stern, P.C., Beverly Van Ness, Michael N. Burt, Law Office of Michael Burt, New York, NY, for Defendant.

Carter H. Burwell, Colleen Elizabeth Kavanagh, Jack Smith, James G. McGovern, Jason Allen Jones, Celia Cohen, Shreve Ariail, United States Attorneys Office, Brooklyn, NY, for Plaintiff.

## MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, District Judge.

In May, the court will begin a penalty trial to determine whether Defendant Ronell Wilson will be sentenced to death or to life imprisonment. The Government plans to argue that a number of aggravating factors justify a death sentence, including Wilson's potential for future dangerousness. Wilson contends that, because the only alternative to a death sentence in his case is life imprisonment without the possibility of release, there is no reliable way to

predict his future dangerousness, let alone to prove it beyond a reasonable doubt. He thus moves to preclude the Government from attempting to establish future dangerousness as an aggravating factor, pursuant to the Fifth Amendment, the Eighth Amendment, and the Federal Death Penalty Act ("FDPA"). In the alternative, he requests an evidentiary hearing regarding the reliability of predictions of future dangerousness for inmates of a federal prison. For the reasons that follow, Wilson's motion and alternative request for an evidentiary hearing are DENIED.

## I. BACKGROUND [1]

■ "Under the FDPA, a defendant is *eligible* for the death penalty if the jury finds [1] the charged homicide, [2] a statutory intent element or threshold mental culpability factor under [18 U.S.C.] § 3591(a)(2), and [3] at least one of the statutory aggravating factors in § 3592(c)." *United States v. Fell*, 531 F.3d 197, 216 (2d Cir.2008) (emphasis added); *see also Jones v. United States*, 527 U.S. 373, 376–77, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). If the jury finds the defendant "death eligible," it must then make a "selection decision"—a determination of "whether the defendant *should* be sentenced to death or life imprisonment." *Fell*, 531 F.3d at 237–38 (emphasis added). The selection decision must be based on a weighing of all the aggravating and mitigating factors. *See* 18 U.S.C. § 3593(e); *Fell*, 531 F.3d at 237. Aggravating factors include those listed in the FDPA and "any other aggravating factor for which notice

has been given." 18 U.S.C. § 3592(c); *see also id.* § 3593(a) (establishing a notice requirement). The Government bears the burden of establishing any aggravating factor beyond a reasonable doubt. *Id.* § 3593(c).

In this case, the Government has given notice of its intent to allege both statutory and non-statutory aggravating factors. (Gov't Notice of Intent to Seek the Death Penalty (Dkt. 174).) One of the non-statutory aggravating factors is that Wilson "represents a continuing danger to the lives and safety of other persons," and "is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others." (*Id.* at 4.) This is commonly referred to as the "future dangerousness" aggravating factor.[2]

On January 19, 2013, Wilson filed a motion asking this court to either: (1) "dismiss the future danger aggravator outright," pursuant to the Fifth Amendment, Eighth Amendment, and the FDPA; or (2) "order an evidentiary hearing concerning the reliability of predictions of future danger within the confines of a United States penitentiary." (Def. Mem. (Dkt. 1005) at 14.) The Government filed a letter in opposition (Gov't Opp'n (Dkt. 1014)) and Wilson replied (Def. Reply (Dkt. 1019)).

## II. DISCUSSION

### A. Fifth and Eighth Amendments

■ Wilson argues that the future dangerousness aggravating factor should be stricken under the Fifth and Eighth

---

1. The court will discuss only the background pertinent to the issues it addresses in this opinion. Additional background can be found in the Second Circuit's decision in this case. *See United States v. Whitten*, 610 F.3d 168, 173–77 (2d Cir.2010).

2. During Wilson's first penalty phase, the court permitted the Government to submit

evidence on this aggravating factor. *See United States v. Wilson*, 493 F.Supp.2d 512, 513–14 (E.D.N.Y.2007). The jury found that the Government had established Wilson's future dangerousness beyond a reasonable doubt. (*See* Special Verdict Form (Dkt. 360) at 11.) That finding has since been vacated by the Second Circuit along with Wilson's death sentence.

Amendments.[3] (Def. Mem. at 2, 12.) This argument is contrary to Supreme Court precedent.

In *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Supreme Court addressed the constitutionality of a Texas statute that permitted a jury to impose the death penalty only if it found "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Id.* at 269, 96 S.Ct. 2950. The petitioner argued that this statute violated the Eighth and Fourteenth Amendments because it was "impossible [for a jury] to predict future behavior." *Id.* at 274, 96 S.Ct. 2950. The Court disagreed. *Id.* at 275, 96 S.Ct. 2950. It reasoned as follows:

> It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct.... The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury ha[s] before it all possible relevant information about the individual defendant whose fate it must determine. Texas law clearly assures that all such evidence will be adduced.

*Id.* at 274–76, 96 S.Ct. 2950.

The Supreme Court next addressed the constitutionality of Texas's future danger-

ousness factor in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). There, the petitioner asserted "that psychiatrists, individually and as a group, are incompetent to predict with an acceptable degree of reliability that a particular criminal will commit other crimes in the future and so represent a danger to the community." *Id.* at 896, 103 S.Ct. 3383. The Court again disagreed for three main reasons. *Id.* It first found the petitioner's argument inconsistent with *Jurek*—if it was "not impossible for even a lay person sensibly to arrive at the conclusion" that a defendant represented a continuing danger to the community (as the Court had found in *Jurek*), then it "ma[de] little sense, if any, to submit that psychiatrists ... would know so little about the subject that they should not be permitted to testify." *Id.* at 896–97, 103 S.Ct. 3383. Second, the Court reasoned that "the rules of evidence ... anticipate that relevant, unprivileged evidence should be admitted and its weight left to the fact finder, who would have the benefit of cross examination and contrary evidence by the opposing party." *Id.* at 898, 103 S.Ct. 3383. Third, the Court was "not persuaded that [testimony on future dangerousness was] almost entirely unreliable [or] that the factfinder and the adversary system w[ould] not be competent to uncover, recognize, and take due account of its shortcomings," particularly because there was no suggestion "that psychiatrists [we]re *always* wrong with respect to future dangerousness, only [that they were] most of the time." *Id.* at 899, 103 S.Ct. 3383 (emphasis added).

In *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the Supreme Court placed a condition on its holdings in *Jurek* and *Barefoot.*

---

**3.** In relevant part, the Fifth Amendment forbids the Federal Government from depriving a person of "life, liberty, or property, without due process of law," and the Eighth Amendment forbids it from inflicting "cruel and unusual punishments."

It held that, where the prosecution alleges future dangerousness against a defendant facing either death or life imprisonment *without the possibility of parole*, the Fourteenth Amendment Due Process Clause requires the trial court to apprise the jury that the only alternative to death is life imprisonment without parole. *See Simmons*, 512 U.S. at 164, 114 S.Ct. 2187. Crucially, however, the court noted that "[o]f course, the fact that a defendant is parole ineligible does not prevent the State from arguing that the defendant poses a future danger," including "to others in prison." *Id.* at 165 n. 5, 114 S.Ct. 2187.

■ To summarize these Supreme Court cases: a jury may constitutionally evaluate a defendant's future dangerousness as an aggravating factor weighing in favor of the death penalty, either on the basis of lay testimony (*Jurek*) or psychiatric testimony (*Barefoot*), but if the only alternative to the death penalty is life imprisonment without parole, the jury must be so informed (*Simmons*). Based on these and other precedents, federal courts " 'have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases.' " *United States v. Basciano*, 763 F.Supp.2d 303, 352 (E.D.N.Y. 2011) (quoting *United States v. Bin Laden*, 126 F.Supp.2d 290, 303 (S.D.N.Y.2001)).

Wilson argues that *Jurek* and *Barefoot* do not foreclose his argument because in those cases, the Texas statute at issue permitted a life sentence *with* the prospect of parole as an alternative to death, and thus the jury could take into account the probability that the defendant would commit acts of violence *outside* of prison. (Def. Mem. at 3.) In his case, by contrast, "the only alternative to a death sentence is life in prison without the possibility of release," and so the jury would be limited to predicting "whether Mr. Wilson will commit serious acts of violence while incarcerated, for the rest of his life, in a maxi-mum-security penitentiary managed by the Bureau of Prisons." (*Id.* at 9.) He argues that there is no reliable way to make this prediction.

In support of this argument, Wilson cites a number of empirical studies—published after *Jurek* and Barefoot—purportedly establishing both: (1) "the stunningly low [ ] rate of violence" for capital murderers in federal custody; and (2) "the inability of jurors and prosecutors to accurately predict the few who would engage in such misconduct." (Def. Reply at 2; *see, e.g.,* Def. Mem. at 5 (describing a 2004 study showing a 95% error rate in expert predictions about a defendant's future dangerousness, and a 2008 study showing: (1) a very low rate of violence for capital murderers under the supervision of the Bureau of Prisons for a sentence of life imprisonment without possibility of release; and (2) no statistically significant difference between the rates of violence of those inmates against whom the Government had formally alleged future dangerousness and those against whom it had made no such allegation); Def. Mem. at 7 (describing a 2009 study finding that "more than 90 percent of the defendants whom jurors had judged dangerous had not engaged in any serious violence in prison thereafter," and that "[j]ury predictions of future violence" were no better than "random guesses for either life- or death-sentenced inmates").) Wilson further contends that his own behavior in prison illustrates the validity of the empirical studies he has provided—although the prosecutor "argued forcefully" at his first penalty phase "that he posed a great risk to prison guards and inmates[,] . . . [h]e has not committed a single act of violence, even of a minor nature," in the seven years since he was sentenced to death. (*Id.* at 9–11; *see also* Def. Reply at 3 (describing Wilson's three prison infractions during this time, none of which was violent).)

In short, Wilson argues that *Jurek* and *Barefoot* are distinguishable because those cases involved predictions of future dangerousness about defendants who could potentially be released from prison (which he recognizes can be constitutionally considered by a capital jury), whereas his case would concern a prediction about a defendant who will never be released (which he contends cannot be reliable enough to satisfy the Constitution). Even crediting the empirical studies Wilson has provided, his argument is unavailing.

First, nothing in *Jurek* and *Barefoot* suggests that their analysis depended on the ability of the petitioner to be released from prison. To the contrary, *Jurek* recognized the difficulty of predicting future dangerousness as a general matter, *see* 428 U.S. at 275, 96 S.Ct. 2950 ("It is, of course, not easy to predict future behavior."), and *Barefoot* noted that "[p]sychiatric testimony predicting dangerousness may be countered not only as erroneous in a particular case but as *generally so unreliable that it should be ignored*," 463 U.S. at 898, 103 S.Ct. 3383 (emphasis added). In both of these cases, the Court made clear that the difficulties in predicting future dangerousness did not mean that the Constitution precludes juries from considering it. *See Jurek*, 428 U.S. at 275, 96 S.Ct. 2950 ("The fact that such a determination is difficult[ ] does not mean that it cannot be made."); *Barefoot*, 463 U.S. at 899 n. 7, 103 S.Ct. 3383 ("All of the[ ] professional doubts about the usefulness of psychiatric predictions can be called to the attention of the jury."). And it emphasized that "the jury [should] have before it all possible relevant information about the individual defendant whose fate it must determine." *Jurek*, 428 U.S. at 276, 96 S.Ct. 2950; *see Barefoot*, 463 U.S. at 898, 103 S.Ct. 3383 (it is "desirable to allow open and far-ranging argument that places as much information as possible before the jury" (citing *Gregg v. Georgia*, 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976))). This reasoning applies equally in Wilson's case. *See United States v. Umana*, 707 F.Supp.2d 621, 634 (W.D.N.C.2010) (concluding that *Jurek* and *Barefoot* foreclosed defendant's motion to strike the future dangerousness aggravator, and finding that "few of the reliability concerns raised by the defendant in the instant motion [we]re new considerations[; i]n *Barefoot*, the Supreme Court explicitly recognized that some studies indicated that predictions of future dangerousness were often wrong" (citing *Barefoot*, 463 U.S. at 899 n. 7, 103 S.Ct. 3383)); *United States v. Concepcion Sablan*, 555 F.Supp.2d 1177, 1181 (D.Colo.2006) (finding *Jurek* and *Barefoot* "controlling" on the issue of admissibility of lay and expert testimony on future dangerousness, despite the defendants' studies showing that such testimony was not reliable); *see also Flores v. Johnson*, 210 F.3d 456, 464 (5th Cir.2000) (Garza, J., concurring) ("It is as true today as it was in 1983 ... 'that psychiatric predictions of long-term future violence are wrong more often than they are right.'" (quoting *Barefoot*, 463 U.S. at 920, 103 S.Ct. 3383 (Blackmun, J., dissenting))).[4]

---

4. The cases upon which Wilson relies are of little help to him. He cites Judge Garza's concurrence in *Flores* for the proposition that "'[t]he scientific community virtually agrees that psychiatric testimony on future dangerousness is, to put it bluntly, unreliable and unscientific'" (Def. Mem. at 4 (quoting *Flores*, 210 F.3d at 463 (Garza, J., concurring))), and he cites *United States v. Sampson*, 335 F.Supp.2d 166 (D.Mass.2004), for the proposition that "juries fare no better [than psychiatrists] in accurately predicting a defendant's risk of future violence" (Def. Mem. at 4 (citing *Sampson*, 335 F.Supp.2d at 222)). These opinions provide thoughtful discussions of the reliability concerns inherent in testimony about future dangerousness, but they also recognize that those reliability concerns have been squarely addressed by the Supreme Court and thus cannot justify striking the future dangerousness factor in the absence of

■ Second, if *Jurek* and *Barefoot* left any doubt that consideration of a defendant's future dangerousness in circumstances such as these is constitutional, surely *Simmons* did not.[5] In *Simmons*, after holding that a jury must be informed if the only alternative to a death sentence is life imprisonment without parole, the court stated: "Of course, the fact that a defendant is parole ineligible does not prevent the State from arguing that the defendant poses a future danger. The State is free to argue that the defendant will pose a danger to others in prison and that executing him is the only means of eliminating the threat to the safety of other inmates or prison staff." 512 U.S. at 165 n. 5, 114 S.Ct. 2187. This statement was in dicta, but it further elucidates the Court's broad approval of jury consideration of a capital defendant's future dangerousness, including with respect to defendants facing no prospect of release.[6]

Third, even if the Supreme Court's precedents did leave room for the court to hold that evidence of future dangerousness can be too unreliable to pass constitutional scrutiny, Wilson's empirical evidence would not suffice in that regard. For one thing, so far as the court can tell, the studies cited by Wilson relate only to the potential that an inmate might *personally* harm people *within* the prison. (*See* Def. Mem. at 4–9.) But a prisoner might also

pose a danger if he is capable of arranging for people outside the prison to engage in violent activity on his behalf—a danger that would be especially present here if, as the Government alleges, Wilson holds a high position in the Bloods criminal organization. (*See* Gov't Opp'n at 3.) Moreover, even when it comes to an inmate's ability to directly cause harm within the prison, Wilson's studies suggest that predictions about a defendant's future dangerousness are unreliable, but not necessarily impossible. (*See, e.g.,* Def. Mem. at 5, 7.) In other words, as in *Barefoot*, Wilson does not "suggest[ ] that [people] are always wrong with respect to future dangerousness, only [that they are] most of the time." 463 U.S. at 901, 103 S.Ct. 3383.

For these reasons, the court concludes that the Fifth and Eighth Amendments do not require the court to strike the aggravating factor of future dangerousness.

**B. Federal Death Penalty Act**

Wilson makes two arguments for why all evidence concerning the future dangerousness aggravator should be excluded pursuant to the FDPA: (1) its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury (Def. Mem. at 12); and (2) the Government cannot possibly prove Wilson's future dangerousness beyond a reasonable doubt (*id.* at 13–14).[7] Neither

Supreme Court intervention. *See Flores,* 210 F.3d at 463 (Garza, J., concurring) ("In *Barefoot,* the Supreme Court squarely rejected the claim that the unreliability of psychiatric predictions of future dangerousness should render [them] inadmissible."); *Sampson,* 335 F.Supp.2d at 222–23 (because of the unreliability of predictions of future dangerousness, "it may be appropriate for the *Supreme Court* to consider again its ruling in *Jurek* " (emphasis added)).

**5.** Wilson did not address *Simmons* in his papers.

**6.** Dicta from the Supreme Court is accorded "great deference." *United States v. Colasuonno,* 697 F.3d 164, 179 (2d Cir.2012); *see also Lewis v. Sava,* 602 F.Supp. 571, 573 (S.D.N.Y. 1984) ("[I]n the absence of any clear authority to the contrary, the court is obliged to follow [Supreme Court dicta].").

**7.** *Jurek* and *Barefoot* inform, but do not foreclose, these arguments because those cases involved only the constitutionality of a jury's consideration of future dangerousness evidence, not whether such evidence should be excluded under the FDPA (which was enacted after *Jurek* and *Barefoot* were decided). *See*

argument is persuasive.

### 1. Balancing Test

 The Supreme Court has stressed that a capital jury should receive "as much information as possible when it makes the sentencing decision." *Gregg*, 428 U.S. at 204, 96 S.Ct. 2909; *see also United States v. Jacques*, 684 F.3d 324, 327 (2d Cir.2012) ("Generally, *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors in the penalty phase of a capital case." (internal quotation marks omitted)). In accordance with this principle, the FDPA provides: "Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."[8] 18 U.S.C. § 3593(c).

Wilson suggests that any evidence on whether he presents a future danger to society would lack probative value because "neither lay persons nor experts can predict with any accuracy which few offenders will be a danger in prison, the only society that is relevant" in his case. (Def. Mem. at 12.) He further argues that the "danger of prejudice . . . is very high" because

"jurors are unlikely to take a risk that [Wilson] will seriously injure or kill someone else," and are thus likely to "choose execution" in order "[t]o avoid feeling complicit in future violence." (*Id.* at 12–13.)

As an initial matter, Wilson does not suggest that *if* reliable evidence of future dangerousness existed, it would be irrelevant to his penalty—and with good reason, as the relevance of future dangerousness to a capital sentencing decision has been well-established, even in cases where the defendant would otherwise be confined to prison for life. *See, e.g., Simmons*, 512 U.S. at 162, 114 S.Ct. 2187 ("This Court has approved the jury's consideration of future dangerousness during the penalty phase of a capital trial, recognizing that a defendant's future dangerousness bears on all sentencing determinations made in our criminal justice system."); *United States v. Lujan*, 603 F.3d 850, 854–55 (10th Cir. 2010) (future dangerousness evidence was "strongly probative" even though the "future danger [would be] limited to a penal setting"); *U.S. v. Allen*, 247 F.3d 741, 788 (8th Cir.2001) ("[W]e have little doubt that future dangerousness to society and to prison officials and other inmates during incarceration is relevant to the jury's final determination of whether a death sentence

---

*Sampson*, 335 F.Supp.2d at 220 (exclusion of evidence on future dangerousness under the FDPA "would not have violated the court's duty to follow the Supreme Court's holding in [ ] *Jurek* ... or *Barefoot*, which addressed whether the Constitution prohibits expert testimony on future dangerousness in a capital trial" (citing *Barefoot*, 463 U.S. at 899 n. 6, 103 S.Ct. 3383)).

**8.** "This standard differs from Federal Rule of Evidence 403, which excludes otherwise relevant evidence where its probative value is *substantially* outweighed by the danger of unfair prejudice or misleading the jury." *United States v. Casey*, No. 05–CR–277 (ADC), 2012 WL 6645702, at *2 n. 2 (D.P.R. Dec. 20, 2012) (emphasis added) (citing Fed.R.Evid. 403).

The FDPA thus "provides the district court with greater discretion to exclude unfairly prejudicial or confusing information than the district court has during the guilt phase." *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir.2010). However, courts have defined the word "relevant" in the FDPA according to "the same standard used throughout the federal courts under Federal Rule of Evidence 401," namely whether the information "has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].' " *Id.* (alteration in original) (quoting Fed.R.Evid. 401); *see also United States v. Basham*, 561 F.3d 302, 331–32 (4th Cir.2009).

should be imposed."); *United States v. Sampson*, 335 F.Supp.2d 166, 222 (D.Mass. 2004) ("Future dangerousness is certainly relevant to the decision of whether the death penalty is justified in a particular case.").

Wilson argues not that *future dangerousness* is irrelevant to the jury's sentencing decision but that any *evidence* of future dangerousness would have little or no probative value in his case because of the unreliability of such evidence when it comes to those who would otherwise be confined to life imprisonment with no possibility of release. (*See* Def. Mem. at 12.) As discussed above in Part II.A, however, Wilson's empirical studies do not demonstrate that predictions about his future dangerousness would entirely lack probative value, both because: (1) these studies do not address the possibility that a prisoner might arrange for people outside of the prison to engage in violent activity; and (2) even regarding a prisoner's ability to directly cause harm within the prison, the studies do not "suggest[ ] that [people] are always wrong with respect to future dangerousness, only [that they are] most of the time." *Barefoot*, 463 U.S. at 901, 103 S.Ct. 3383. Thus, although future dangerousness can be difficult to predict, *see Jurek*, 428 U.S. at 274–76, 96 S.Ct. 2950, Wilson's empirical studies do not convince the court that the Government is incapable of offering evidence that would be probative of future dangerousness, which in turn would be highly relevant to the decision of whether the death penalty should be imposed. *See Simmons*, 512 U.S. at 162, 114 S.Ct. 2187; *Lujan*, 603 F.3d at 854–55; *Allen*, 247 F.3d at 788; *Sampson*, 335 F.Supp.2d at 222.

■ The court therefore turns to whether the probative value of any evidence of future dangerousness would be "outweighed by the danger of creating unfair prejudice, confusing the issues, or mislead-ing the jury." 18 U.S.C. § 3593(c). Importantly, the FDPA "permits balancing of probative value against '*unfair* prejudice,' not all prejudice." *Lujan*, 603 F.3d at 858; *see also United States v. Pinillos–Prieto*, 419 F.3d 61, 72 (1st Cir.2005) ("Virtually all evidence is prejudicial—if the truth be told, that is almost always why the proponent seeks to introduce it—but it is only the *unfair* prejudice against which the law protects."). In other words, "[u]ndue prejudice does not exist simply because the contested evidence increases the likelihood that a defendant will receive a sentence of death." *United States v. Casey*, No. 05–CR–277 (ADC), 2012 WL 6645702, at *2 (D.P.R. Dec. 20, 2012).

■ It is therefore of no moment that jurors might be likely to "choose execution" based on "the risk that [Wilson] will seriously injure or kill someone else." (Def. Mem. at 12–13.) Indeed, that is precisely what the jury *should* be considering. *See Sampson*, 335 F.Supp.2d at 222 ("There is arguably no more compelling justification for a death sentence than a reliable conclusion that a convicted murderer is likely to kill again if he is not executed."). So long as the Government's evidence is appropriately tailored to proving Wilson's future dangerousness, and so long as Wilson has the opportunity both to contest the prosecution's evidence (including with the empirical studies discussed above) and to provide his own mitigating evidence, he will not suffer *unfair* prejudice, and the jury will "be competent to uncover, recognize, and take due account of [the] shortcomings" of the Government's evidence. *Barefoot*, 463 U.S. at 899, 103 S.Ct. 3383; *see Lujan*, 603 F.3d at 858 ("Where the defendant has wide latitude to put on mitigating evidence of his positive characteristics and sympathetic past, there is nothing inherently 'unfair' with allowing the government some latitude to present

the unfavorable aspects of the defendant, so long as that evidence is relevant to a properly identified aggravator and does not involve gratuitous gruesomeness or inflammatory detail beyond what is necessary to reveal to the jury the true nature of what happened."); *see also Basciano,* 763 F.Supp.2d at 353 ("The court need not conclude that the circumstances of Basciano's confinement have already 'nullified' Basciano's dangerousness. The parties have both pointed to specific information on each side of the issue, and both Basciano and the Government will have the opportunity to offer appropriate information to the jury.").

For these reasons, although Wilson will of course be free to seek exclusion of *specific* evidence of future dangerousness to the extent he believes that the probative value of that evidence is outweighed by the dangers recognized by the FDPA, the court rejects Wilson's request for a blanket ruling that testimony relating to future dangerousness is inadmissible under the FDPA's balancing test. *Cf. Concepcion Sablan,* 555 F.Supp.2d at 1183–84 ("deny[ing] Defendants' motions to the extent they seek a per se rule that expert and/or lay testimony on the issue of future dangerousness is inadmissible," but "defer[ring] the motions to the extent they seek a ruling that specific lay testimony or expert testimony to be presented in this case on future dangerousness is inadmissible"); *United States v. Taveras,* 585 F.Supp.2d 327, 335–40 (E.D.N.Y.2008) (Weinstein, J.) (applying the FDPA balancing test to specific evidence that the Government proffered to establish future dangerousness). As it did in *Basciano,* the court will take any necessary measures to "ensure that the [j]ury's consideration [of future dangerousness] is limited to the expected circumstances of [Wilson]'s confinement should the death penalty not be imposed," 763 F.Supp.2d at 353—that is, life imprisonment in a maximum-security facility without the prospect of release.

### 2. *Proof Beyond a Reasonable Doubt*

The FDPA provides that "[t]he burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt." 18 U.S.C. § 3593(c). Wilson argues that the Government cannot meet this burden with respect to his future dangerousness because: (1) "the base rate for acts of serious violence by federal capital offenders is extremely low"; and (2) "there is no way to reliably predict that a particular defendant will be among that handful of individuals." (Def. Mem. at 13–14.)

These arguments are essentially a repeat of those discussed above, and the court rejects them for similar reasons. For one thing, although the Supreme Court has not addressed this precise issue of proof of future dangerousness beyond a reasonable doubt, its consistent approval of jury consideration of this aggravating factor implicitly (and perhaps necessarily) suggests that the burden can indeed be satisfied, despite the reliability concerns inherent in future dangerousness evidence. *See Barefoot,* 463 U.S. at 905–06, 103 S.Ct. 3383 (upholding a Texas statute requiring proof of future dangerousness beyond a reasonable doubt); *Jurek,* 428 U.S. at 269, 276, 96 S.Ct. 2950 (same). In any event, for the reasons discussed above (*see* Part II.A), Wilson's proffered studies do not establish that a reasonable jury would be unable to find the future dangerousness aggravator beyond a reasonable doubt; for example, these studies do not appear to undermine at all a potential argument by the Government based on specific evidence that Wilson has the ability to arrange violence that would take place outside of prison. The studies provide only generalized

statistics on predictions of future dangerousness about federal prisoners, and simply do not foreclose all conceivable evidence of future dangerousness specific to Wilson.[9]

## III. CONCLUSION

Wilson's motion to strike the aggravating factor of future dangerousness is DENIED. And because the court is capable of addressing Wilson's arguments on the basis of the record and the parties' papers, Wilson's alternative request for an evidentiary hearing on future dangerousness is DENIED. Wilson may, at the appropriate time, seek exclusion of specific evidence related to his potential for future dangerousness pursuant to the FDPA.

SO ORDERED.

---

**9.** It is also worth noting that numerous courts have upheld jury findings of future dangerousness. *See, e.g., United States v. Davis,* 609 F.3d 663, 674–75 (5th Cir.2010); *United States v. Corley,* 519 F.3d 716, 723–27 (7th Cir.2008); *White v. Dretke,* 126 Fed.Appx. 173, 178 (5th Cir.2005).